UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIAN DANIEL KHATABI,

                 Plaintiff,

– against –

STEPHEN BONURA, ROBERT MAZZEI, THE VILLAGE OF PLEASANTVILLE, and THE VILLAGE OF PLEASANTVILLE POLICE DEPARTMENT,

                 Defendants.

**OPINION AND ORDER**

10 Civ. 1168 (ER)

Ramos, D.J.:

Before the Court is Plaintiff Kian Daniel Khatabi's ("Plaintiff" or "Khatabi") objections to Magistrate Judge Paul E. Davison's Order dated September 21, 2012 ("the Order"). Plaintiff's Rule 72 Objections ("Pl.'s R. 72 Obj.") Doc. 108. In the Order, Judge Davison denied Plaintiff's request for discovery sanctions against Defendants Village of Pleasantville ("Village"), Village of Pleasantville Police Department ("VPPD"), Stephen Bonura ("Bonura"), and Robert Mazzei ("Mazzei") (collectively, "Defendants") for the alleged spoliation of evidence. Memorandum and Order Denying Motion for Sanctions ("Order") (Doc. 57). For the reasons stated herein, the Court OVERRULES Plaintiff's objections.

## I. BACKGROUND

A detailed factual background and procedural history relevant to the underling motion are set forth in the Order and the parties' submissions, familiarity with which is assumed.

Briefly stated, in February 1998, following an investigation by Defendants, Plaintiff was arrested for allegedly stabbing two victims during a fight at a bar, William Boyar ("Boyar") and Brian Duffy ("Duffy"). *See* Order at 2. Following a jury trial in February 1999, Plaintiff was

convicted of assault in the first degree and criminal possession of a weapon in the fourth degree, and was sentenced to an indeterminate prison term of seven to fourteen years on the assault count and a concurrent term of one year on the weapon possession count. *Id.* After a series of unsuccessful attempts to appeal the decision, in November 2007, more than eight years later, Plaintiff's brother confessed to his family that he was in fact the one who committed the stabbing and that Plaintiff was innocent. *Id.* at 2–3. Based upon his brother's confession, in April 2009, Plaintiff moved to vacate his judgment of conviction and dismiss the indictment. *Id.* at 3. In September 2008, based on this newly discovered evidence, the state court reversed Plaintiff's conviction and ordered a new trial. *Id.* In December 2008, the Westchester County District Attorney's Office moved to dismiss Plaintiff's indictment, and the state court granted the motion. *Id.*

On February 16, 2010, Plaintiff initiated this civil action against Defendants, alleging that during the course of the underlying police investigation and prosecution of Plaintiff, Defendants engaged in various violations of his civil rights under federal and New York state law, as well as related state law torts. *See* Doc. 1 ("Complaint"). Plaintiff seeks compensatory damages, punitive damages, and attorneys' fees and costs.

By motion dated July 16, 2012, Khatabi sought sanctions for the destruction of or failure to preserve during the course of the criminal investigation and prosecution the following evidence: (1) handwritten notes purportedly taken by Lead Detective Mazzei during his interviews of the victims; (2) clothing that was worn by the victims on the night of the stabbing that was not recovered by the police; (3) clothing that was worn by the victims that was recovered by the police near the crime scene but was later lost; (4) a videotape recording showing Plaintiff inside the police station on the night of the stabbings that was subsequently

taped over; and (5) audio recordings of police transmissions made shortly after the stabbings that were subsequently taped over. Doc. 44 at 2–3. Pursuant to Plaintiff's request, Magistrate Judge Davison heard oral argument on the motion on September 14, 2012. *See* 9/14/12 ECF Minute Entry.

On September 21, 2012, Magistrate Judge Davison issued the Order, declining to impose sanctions. Doc. 57. On October 5, 2012, Plaintiff filed his Rule 72 Objections to the Order, asserting fifteen objections. Doc. 58. Defendants filed their response on October 19, 2012. Doc. 61. The Court rejected Plaintiff's sixty-four page memorandum in support of his objections because it exceeded the twenty-five page limit for motion papers outlined in the Court's individual practices. Doc. 62. The Court directed Plaintiff to re-file the memorandum of law within the appropriate page limit by November 26, 2012. *Id.* In October and early November 2012, in a series of communications via telephone and email, Plaintiff made known to his counsel that he no longer wished to be represented by them, and directed his attorneys to refrain from taking any further actions on his behalf. *See* Declaration of Ameer Benno (Doc. 63-1) at ¶ 8. On November 13, 2012, Plaintiff's counsel filed a motion requesting to withdraw as counsel. *See* Docs. 66–74.

On January 22, 2013, the Court granted counsel's motions to withdraw. See 1/22/2013 ECF Minute Entry. At the January 22, 2013 Conference, Plaintiff's former counsel provided a status update for the Court, indicating that as a result of the breakdown in the relationship, Plaintiff was not in a position to file the amended spoliation motion under the original deadline. *See* Doc. 79 at 2–3.

On April 24, 2013, a status conference was held, and the Court inquired about the status of his objections to Judge Davison's Order, but no deadlines were set regarding an

amended filing. *See* Doc. 82 at 23–24. On January 13, 2014, new counsel appeared for Plaintiff. Doc. 94. At the status conference on March 14, 2014, the Court ordered Plaintiff to submit his amended objections to the spoliation motion by June 16, 2014. *See* 03/14/2014 Minute Entry.

On May 21, 2014, Plaintiff filed his amended and narrowed objections to the Order, arguing that spoliation sanctions are warranted for the loss of: (1) the handwritten notes purportedly taken by Mazzei; (2) the hat and shirt worn by the victims that was recovered near the crime scene; and (3) the videotape recording showing Plaintiff inside the police station at the time of the stabbings. Pl.'s R. 72 Obj. at 1. Thus, Plaintiff does not challenge the Order with respect to the clothing that was not recovered by the police and audio recordings of police transmissions. *See id.*

## II.    LEGAL STANDARDS

### A.    Standard of Review

As a threshold matter, the parties dispute the appropriate standard of review. Plaintiff argues the Court should review the Order *de novo* because "Plaintiff sought terminating sanctions and a Magistrate Judge's determination of a dispositive motion is subject to *de novo* review by the District Judge." Pl.'s R. 72 Obj. at 8. Defendants contend that the appropriate standard is whether the Order is clearly erroneous or contrary to law because the underlying sanctions motion is a non-dispositive motion. Defendants' Response to Plaintiff's Rule 72 Objections to Magistrate Judge Davison's September 21, 2012 Memorandum and Order on Plaintiff's Motion for Sanctions for the Alleged Spoliation of Evidence ("Defs.' Resp.") (Doc. 112) at 2. Rule 72 of the Federal Rules of Civil Procedure, which sets forth the procedures for objecting to a magistrate's pretrial order or recommendation, divides pretrial matters into two

categories: Rule 72(a) speaks to pretrial matters "not dispositive of a party's claim or defense" while Rule 72(b) governs pretrial matters that are so dispositive. Fed. R. Civ. P. 72. The former invokes a "clearly erroneous" or "contrary to law" standard of review while the latter requires a "*de novo*" determination. *See id.*

Here, the Court referred the discovery dispute to Judge Davison as a "non-dispositive motion dispute" and shortly thereafter referred the entire case for general pre-trial purposes. *See* Docs. 30, 33. In the sanctions motion, Plaintiff requested, *inter alia*, that the Court strike defendants' answers and grant Plaintiff default judgment on his claims. Doc. 44 at 22. Pursuant to those referrals, Judge Davison had the authority to impose sanctions for spoliation—as long as those sanctions were non-dispositive. *See, e.g., UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.,* No. 09 Civ. 10004 (LAK) (JCF), 2011 WL 1453797, at *1 n.2 (S.D.N.Y. Apr. 11, 2011) (explaining that a magistrate judge lacks authority to dismiss a case as a sanction for spoliation, but "has the authority to issue less severe sanctions, including preclusion orders, in the course of overseeing discovery"); *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 247–48 & n. 1 (S.D.N.Y. 2010) (holding that a magistrate judge had authority to preclude evidence as a sanction for spoliation). A magistrate judge can recommend default judgment as a sanction for spoliation for the Court's consideration, although he cannot impose such a sanction unilaterally. *See* Fed. R. Civ. P. 72(b); *see also Kiobel v. Millson*, 592 F.3d 78, 101 (2d Cir. 2010) (Leval, J., concurring) (explaining that a magistrate judge has authority to impose only those discovery sanctions that are non-dispositive); *Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 180 (S.D.N.Y. 2014) (magistrate judge to whom pretrial proceedings, including non-dispositive motions, have been referred, has the authority to impose sanctions for spoliation, including the preclusion of evidence, so long as those sanctions are non-dispositive, and the

review of any such non-dispositive decision is under a clearly erroneous or contrary to the law standard, but dispositive spoliation sanctions, such as dismissal, could only be recommended and that recommendation is subject to *de novo* review).

To determine whether a magistrate judge's ruling regarding discovery sanctions is "dispositive," the Court must look to the effect of the sanction—if imposed. *See Kiobel*, 592 F.3d at 97 ("Analyzing the *effects* of the particular sanction *imposed* by a magistrate judge, to determine whether it is dispositive or nondispositive of a claim, is the approach that best implements Congress's intent.") (emphasis added). Thus, in determining between dispositive and non-dispositive discovery sanctions, the critical factor is what sanction the magistrate judge *actually imposes*, rather than the one requested by the party seeking sanctions. *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1519–20 (10th Cir. 1995) (rejecting argument that magistrate judge ruled on dispositive motion because litigant sought entry of a default judgment and explaining that "[e]ven though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction," the order is treated as non-dispositive under Rule 72(a)); 12 Wright, Miller & Marcus, FEDERAL PRACTICE & PROCEDURE § 3068.2, at 342–44 (2d ed. 1997) (disputes about handling of discovery ordinarily viewed as non-dispositive under Rule 72 and treated as dispositive only when "the magistrate judge actually imposes" a dispositive sanction); *cf. La Barbera v. ASTC Labs., Inc.*, No. Civ. 2006-5306 (DLI) (MDG), 2007 WL 1423233, at *1 (E.D.N.Y. May 10, 2007) ("However, since entry of default is a potential sanction, whether my decision is a matter within my pretrial reference authority depends on the sanction imposed."); *but see Estate of Jackson ex rel. Jackson v. Cty. of Suffolk*, No. 12 Civ. 1455 (JFB), 2014 WL 3513403, at *3 (E.D.N.Y. July 15, 2014) (in case where Plaintiff requested to strike Defendants' pleading and enter default judgment, "[i]n an abundance

of caution, the Court has treated the Spoliation Order as a Report and Recommendation and conducted a de novo review of the entire Spoliation Order.").

Here, Magistrate Judge Davison ultimately denied the motion for sanctions, including denying Plaintiff's request for default judgment. *See* Order at 36. Therefore, because Judge Davison did not impose any terminating sanctions, the Court treats his ruling as non-dispositive and considers whether his Order is clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). An order is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *See, e.g., Surles v. Air France*, 210 F. Supp. 2d 501, 502 (S.D.N.Y. 2002). It is contrary to law if "it fails to apply or misapplies relevant statutes, case law or rules of procedure." *MacNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008). This is a highly deferential standard, and the objector thus carries a heavy burden. *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, No. 04 Civ. 6189, 2007 WL 2327068 (JFK), at *1 (S.D.N.Y. Aug. 13, 2007).

**B.     Spoliation**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "[T]he spoliation doctrine is predicated on evidence actually existing and being destroyed." *Khaldei v. Kaspiev*, 961 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) (quoting *Orbit One Commc'ns v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010) (internal quotation marks omitted)). Thus, "for sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after *evidence actually existed.*" *Farella v. City of New York*, 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007) (emphasis in original).

Where, as here, a party seeks "severe" sanctions for the alleged spoliation of evidence—such as the preclusion of critical evidence, an adverse inference instruction, or dismissal of the case—it must establish that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed "with a culpable state of mind;" and (3) the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could infer that it would support that claim or defense. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). Moreover, "a court should never impose spoliation sanctions of any sort unless there has been a showing—inferential or otherwise—that the movant has suffered prejudice." *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 316 (S.D.N.Y. 2013) (citation omitted); *see also Riley v. Marriott Int'l, Inc.*, No. 12 Civ. 6242P, 2014 WL 4794657, at *5 (W.D.N.Y. Sept. 25, 2014) ("Although a finding that the moving party has been prejudiced is not a prerequisite to the imposition of sanctions, before awarding more severe sanctions — such as dismissal, preclusion, or the imposition of an adverse inference — the court must consider . . . whether the innocent party has suffered prejudice as a result of the loss of relevant evidence.") (internal quotation marks, brackets, and citations omitted).

## III. DISCUSSION

There is no dispute that Defendants lost the victims' clothing that was retrieved at the scene or that they taped over the video of Plaintiff at the police station. In his objections, Plaintiff argues that: (1) he has established that the handwritten interview notes actually existed; (2) Defendants had a duty to preserve all of the evidence at issue; and (3) the loss of evidence was intentional, in bad faith, and grossly negligent. The Court considers each objection in turn.

8

### 1. Existence of the Handwritten Notes

Magistrate Judge Davison denied Plaintiff's motion with respect to the loss of Mazzei's handwritten interview notes based on the finding that Plaintiff did not establish that the handwritten notes actually existed. Order at 10–13. Plaintiff argues that this finding is contrary to the factual record because Mazzei possessed additional handwritten notes taken during his interviews of the victims. Pl.'s R. 72 Obj. at 10–11. Specifically, Plaintiff argues that two categories of handwritten notes existed and disappeared: (1) a page long witness statement from Duffy; and (2) additional "scratch notes" from Mazzei's interviews with the victims. Pl.'s R. 72 Obj. at 10–11. Plaintiff avers that these notes would have indicated that the victims lacked a memory of the incident and identified Plaintiff in a photo array only as someone who may have been at the bar where the stabbing took place, but not the actual assailant. *Id.* at 11. Thus, Plaintiff argues that the factual record supports the inference that the "handwritten notes disappeared to allow Boyar and Duffy to falsely implicate the Plaintiff based on Mazzei's representation to them that Plaintiff was the stabber and to prevent Plaintiff's criminal attorney from ascertaining that Boyar had no memory of the stabbing and that Duffy implicated someone other than the Plaintiff." *Id.* Magistrate Judge Davison concluded that the testimony Plaintiff cited in his spoliation motion did not demonstrate a concession that Mazzei took or destroyed any additional handwritten notes during the victim interviews at issue. Order at 11–12. The Court agrees.

As to the page long witness statement from Duffy, in his spoliation motion, Plaintiff relied on Mazzei's prior deposition and in-court testimony to support his claim that Mazzei possessed handwritten notes regarding his interview from the criminal investigation. In Plaintiff's objections filed with this Court, he cites and attaches *additional* trial testimony from

9

Mazzei dated February 5, 1999 that was not cited in Plaintiff's spoliation brief to Judge Davison or its supporting documentation. The additional testimony states:

> Q. I think you indicated on direct that you spoke with Brian Duffy?
>
> A. That's correct.
>
> Q. And when you spoke with Brian Duffy, sir, did you take any notes?
>
> A. Yes, I did.
>
> Q. And the notes, sir, that you took, were they several pages, or how would you describe it, sir?
>
> A. It was approximately one page.
>
> Q. Would it be fair to say it was approximately roughly four lines; would that be a fair statement?
>
> A. That was not his total statement.
>
> Q. Oh that was not his total statement. There were some other handwritten notes, sir, that were taken when you interviewed Mr. Duffy?
>
> A. Yes, but once they were put into the computer, the handwritten notes were thrown out.
>
> Q. Sir, before the handwritten notes would be thrown out, would you have the witness review the computer statement, the typed statement, I presume?
>
> A. Yes.
>
> Q. And with respect to Mr. Duffy, did you have him review any typed statement, sir?
>
> A. Yes, I did, I did.
>
> Q. And before you presented the typed statement to Mr. Duffy, did you have -- let me rephrase it. Who typed the statement?
>
> A. I did.
>
> Q. So you know that the typed statement was the same as the handwritten statement --
>
> A. That's correct.
>
> Q. That you ultimately threw out, correct?

A. That's correct.

Doc. 109-48 ("February 5, 1999 Trial Proceedings") at 340–41.

Plaintiff did not reference or attach this exhibit to his original spoliation motion. "[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the R & R, and indeed may not be deemed objections at all." *Tarafa v. Artus*, No. 10 Civ. 3870 (AJN), 2013 WL 3789089, at *2 (S.D.N.Y. July 18, 2013) (citation omitted); *see also Toth v. N.Y.C. Dep't of Educ.*, No. 14 Civ. 3776 (SLT), 2017 WL 78483, at *7 (E.D.N.Y. Jan. 9, 2017) ("a district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate" (quoting *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008)); *Gonzalez v. Garvin*, No. 99 Civ. 11062 (SAS), 2002 WL 655164, at *2 (S.D.N.Y. Apr. 22, 2002) (dismissing petitioners objection "because it offers a new legal argument that was not presented in his original petition"). Thus, the Court finds no clear error based on the record before Magistrate Judge Davison in regards to his analysis that the testimony cited by Plaintiff did not demonstrate any concession that Mazzei took or discarded additional handwritten notes—whether those be scratch notes or a one page statement—during the victim interviews at issue. *See* Order at 11–12.[1] The statements in the record before Magistrate Judge Davison were speculative and uncertain—Mazzei acknowledged that he "maybe" made additional handwritten notes and that it was his normal practice to throw away handwritten notes after he typed them into the computer. *See id.* Accordingly, Plaintiff's objection with regard to the existence of the handwritten notes is OVERRULED.

---

[1] Even if this evidence were before Magistrate Judge Davison and this Court found his holding regarding the existence of the handwritten notes to be clear error, this Court still finds that sanctions are not appropriate for the reasons discussed below.

## 2. Duty to Preserve

Plaintiff argues that Defendants had a duty to preserve the handwritten interview notes, clothing, and videotape at the time that they were lost or destroyed and that Magistrate Judge Davison denied Plaintiff's motion based on flawed reasoning regarding duty to preserve. Pl.'s R. 72 Obj. at 12–16. "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). Plaintiff avers that the Defendants had an obligation to preserve all of the aforementioned evidence "during the criminal investigation and thereafter while Plaintiff's various litigations continued." Pl.'s R. 72 Obj. at 12. Magistrate Judge Davison held that Defendants could not have been expected to have reasonably anticipated the instant civil action at the time of the criminal investigation and prosecution of Plaintiff. Order at 14.

As support for its objection, Plaintiff relies largely on *Manganiello v. City of New York*, 612 F.3d 149, 154–58 (2d Cir. 2010)—a case that both parties fully briefed before Magistrate Judge Davison, and one that Judge Davison expressly distinguished in his Order. Relying on *Manganiello*, Plaintiff argues that a police officer has an obligation to preserve evidence obtained during the course of its criminal investigations, and its failure to do so will justify the imposition of spoliation sanctions in a subsequent civil lawsuit. *See* Pl.'s R. 72 Obj. at 13. Judge Davison rejected Plaintiff's argument, stating:

> The Court notes two important distinctions between *Manganiello* and the present case. First, in *Manganiello*, the underlying criminal prosecution resulted in an acquittal, *see Manganiello*, 612 F. 3d at 154, and therefore the civil litigation in that case arguably became foreseeable immediately after the criminal prosecution ended. In the present case, on the other hand, the instant litigation arguably did not become foreseeable until several years after the conclusion of the underlying

12

criminal prosecution, when Plaintiff filed his § 440.10 motion on the basis of his brother's confession. Second, in *Manganiello*, there was no dispute that defendants owed a duty to preserve the file for purposes of the criminal investigation and prosecution given that the contents of the file had been gathered by the police and specifically committed to the lead officer for safekeeping, *see id.* at 166–67; the only dispute in that case, therefore, was whether such a duty could give rise to a duty to preserve for purposes of a spoliation motion in a subsequent civil proceeding. In the instant motion, on the other hand, Plaintiff seeks spoliation sanctions on the basis of Defendants' failure to secure or preserve individual items of evidence for which Defendants claim that they did not owe any duty to preserve, even in the context of the criminal investigation and prosecution. *See* Def.'s Mem. at 7-10. Accordingly, because the facts of *Manganiello* are distinct from the facts of the present motion, the Court next considers whether Defendants may have been obligated to preserve any of the individual items of evidence at issue for purposes of Plaintiffs criminal case and, if so, whether any failure to do so may provide the basis for spoliation sanctions in the instant litigation.

Order at 17–18.

The Court OVERRULES Plaintiff's objection to Magistrate Judge Davison's ruling with respect to the duty to preserve. Even assuming *arguendo* that Magistrate Judge Davison erred in his application of law regarding the duty to preserve, any such error was harmless because Judge Davison explicitly stated that his ruling was not based on any lack of duty to preserve, but rather Plaintiff's inability to establish the remaining elements for spoliation sanctions—culpable state of mind, relevance, and prejudice. *See* Order at 22–23 ("Given the disputes regarding whether these items were in fact exculpatory or otherwise relevant and discoverable, whether Plaintiff was aware that these items were in Defendants' possession at the time of the criminal investigation, and whether Plaintiffs criminal defense counsel adequately requested production of these items so as to require that Defendants preserve them, the Court will assume *arguendo* that Defendants owed a duty to preserve the . . . video recordings and clothing obtained from the scene of the crime for purposes of the criminal investigation at the time that these items were lost or destroyed. Even assuming that Defendants owed such a duty, however, the Court remains unpersuaded that spoliation sanctions are warranted for the reasons set forth below."). Thus, Magistrate Judge Davison's

Order is not dependent on any failure to establish a duty to preserve, and the Court agrees with his conclusion that even assuming *arguendo* that Defendants owed a duty to preserve the evidence, spoliation sanctions are not warranted.

### 3. Culpable State of Mind, Relevance, and Prejudice

Plaintiff challenges Magistrate Judge Davison's findings that there was insufficient evidence in the record to establish Defendant's culpable state of mind under the second prong of the spoliation analysis. First, as discussed above, Plaintiff argues that the record establishes that Mazzei's handwritten notes existed and that Mazzei admitted to intentionally discarding them. Pl.'s R. 72 Obj. at 16. Second, Plaintiff argues that Defendants' failure to preserve the articles of clothing was intentional, in bad faith, or at minimum grossly negligent, and that any purported explanation of an innocent loss is untenable. *Id.* at 17–18. Third, Plaintiff argues that the loss of the videotape was intentional because Defendants failed to take minimal steps to preserve the video and withheld its contents from the prosecutor. *Id.* at 18. Plaintiff again relies on *Manganiello* in arguing that sanctions should be imposed. *Id.* at 17.

"The state of mind with which the evidence was destroyed affects what showing is required of the movant." *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9480315, at *3 (S.D.N.Y. Dec. 29, 2015). Specifically, where a party willfully destroys evidence, courts presume the relevance of the destroyed evidence. *See, e.g., Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 504–05 (S.D.N.Y. 2013). Where the party engaged in gross negligence, a court *may* infer relevance. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) ("[A] finding of gross negligence merely permits, rather than requires, a district court to give an adverse inference instruction."). And where destruction of evidence occurs as the result of ordinary negligence, a presumption of relevance never applies. *See GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 358 (S.D.N.Y. 2012); *see*

14

*also Zubulake*, 220 F.R.D. at 221 ("This corroboration requirement is even more necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him." (internal quotation marks omitted)).

The term "relevant" in this context "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." *Residential Funding*, 306 F.3d at 108–09. Instead, to establish relevance, the party seeking sanctions "must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed . . . evidence would have been" favorable to its case. *Id.* at 109 (internal quotation marks omitted).

As discussed above, as to the handwritten notes, the Court agrees with Magistrate Judge Davison that Plaintiff did not sufficiently establish their existence such that the notes can form the basis of a spoliation motion.

As to the clothing, Magistrate Judge Davison found that Defendants' failure to preserve the clothing was "at worst negligent" because it was inadvertently lost during a renovation of the police station and not due to any deliberate actions. Order at 25. Although Plaintiff argues that Mazzei was in charge of overseeing the relocation of the evidence and that the Chief testified that all evidence was moved to the new building and secured, the Court discerns nothing in the record to suggest any bad faith or deliberate actions by Mazzei. Here, the Court agrees with Judge Davison, who was in the best position to test the credibility of the witnesses, that Defendants' conduct with respect to the loss of the clothing was at worst negligent, so therefore a presumption of relevance is unwarranted. *See, e.g.*, *Zubulake*, 220 F.R.D. at 221. Thus, for sanctions to be warranted, "there must be extrinsic evidence to demonstrate that the destroyed evidence . . . would have been unfavorable to the destroying party." *Great N. Ins. Co. v. Power*

*Cooling, Inc.,* No. 06 Civ. 874 (KAM), 2007 WL 2687666, at *11 (E.D.N.Y. Sept. 10, 2007) (internal quotation marks omitted). Magistrate Judge Davison held that the court was "unpersuaded by Plaintiff's speculation that a reasonable jury could conclude that this clothing would support his claims that Defendants lacked probable cause for his arrest or withheld exculpatory evidence from him, or that this clothing would otherwise be favorable to Plaintiff in this litigation." Order at 29. The Court finds no clear error with respect to Magistrate Judge Davison's holding regarding the clothing, and therefore finds spoliation sanctions are not appropriate for the loss of this evidence.

As to the video recording, Magistrate Judge Davison concluded that "it was negligent, or perhaps even grossly negligent, for Defendants to permit [the] tape to be erased within sixty days of the incident . . . ." Order at 25–26. Plaintiff argues that the destruction of the videotape was intentional because Mazzei and Bonura were aware of its relevance and failed to take even minimal steps to preserve it, which was in violation of department regulations, statutory obligations, and good police procedure. Pl.'s R. 72 Obj. at 18–19. Plaintiff also argues that an inference of bad faith or intentional destruction can be drawn because there is a note in the police file, "which appears to be in Bonura's handwriting, that says 'do not release to defendants' attorney.'" *Id.* at 19. However, while there appears to be no dispute that this handwritten note is contained within the police file, there is no evidence to suggest that the note refers to the videotape.

Judge Davison analyzed the relevance of the video evidence "assuming that Plaintiff has established that Defendants' failure to preserve . . . was . . . grossly negligent . . . " and held that while Plaintiff offered some extrinsic evidence to demonstrate the potential relevance of the videotape—namely a chronology report setting forth the times at which Plaintiff entered and

16

exited the station—"this same evidence suggests to the Court that Defendants' failure to preserve the videotape has not actually prejudiced Plaintiff in this litigation . . . ." Order at 26, 32–33. That the Defendant was in the local police station is not disputed, and Plaintiff is still able to prove that he was at the police station during the relevant time period by using the chronology report, which indicates when Plaintiff arrived and departed the police station. Doc. 109-13. Magistrate Judge Davison also noted that during oral argument, Defendants' counsel represented that Defendants concede that Plaintiff did not appear disheveled or covered in blood, as allegedly would be demonstrated by the videotape. Order at 33 n.6. The Court finds that Magistrate Judge Davison's Order with respect to the videotape contains no clear error and is not contrary to law because Plaintiff has not been prejudiced by the failure to preserve the videotape such that spoliation sanctions are appropriate.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's objections are OVERRULED, and for the reasons set forth in Magistrate Judge Davison's Order and in this Order, Plaintiff's motion for the imposition of sanctions based upon spoliation is DENIED in its entirety. The parties are directed to appear for a status conference on **May 23, 2017 at 11:30 AM.**

It is SO ORDERED.

Dated:   April 21, 2016
           New York, New York

                                                        Edgardo Ramos, U.S.D.J.