UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIAN DANIEL KHATIBI,

                Plaintiff,

– against –

STEPHEN BONURA, ROBERT MAZZEI,
THE VILLAGE OF PLEASANTVILLE, and
THE VILLAGE OF PLEASANTVILLE
POLICE DEPARTMENT,

                Defendants.

<u>ORDER</u>

10 Civ. 1168 (ER)

Ramos, D.J.:

    Before the Court is Kian Daniel Khatibi's motion to vacate the claim of Shandell, Blitz, Blitz & Ashley LLP to any charging lien and to reduce the amount of the funds in the special account, which are being held as security for Khatibi's prior attorney's fees, from $1,195,000 to $245,0000.  Doc. 166.  For the following reasons, Khatibi's motion is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

    In February 1998, following an investigation by Defendants, Khatibi was arrested for allegedly stabbing two victims during a fight at a bar.  *See* Doc. 57 at 2.  Following a jury trial in February 1999, Khatibi was convicted of assault in the first degree and criminal possession of a weapon in the fourth degree, and was sentenced to an indeterminate prison term of seven to fourteen years on the assault count and a concurrent term of one year on the weapon possession count.  *Id.*  After a series of unsuccessful attempts to appeal the decision, in November 2007, more than eight years later, Khatibi's brother confessed to his family that he was in fact the one who committed the stabbing and that Khatibi was innocent.  *Id*. at 2–3.

Based upon his brother's confession, in April 2008, Khatibi moved to vacate his judgment of conviction and dismiss the indictment. *Id.* at 3. In September 2008, based on this newly discovered evidence, the state court reversed Khatibi's conviction and ordered a new trial. *Id*. In December 2008, the Westchester County District Attorney's Office moved to dismiss Khatibi's indictment, and the state court granted the motion. *Id.* Khatibi states that he originally retained the firm of Shandell, Blitz, Blitz & Ashley LLP to represent him in late 2008, and Ameer Benno was assigned to the case. Doc. 161, Ex. 1 ¶ 5.

In the summer of 2009, Benno advised Khatibi that the firm was breaking up, but that he was starting his own practice and would continue to represent him. *Id.* Khatibi signed a contract with Benno on July 8, 2009. On February 16, 2010, Khatibi, through Benno, initiated this civil action pursuant to 42 U.S.C. § 1983 against Defendants, alleging that during the course of the underlying police investigation and prosecution of Khatibi, Defendants engaged in various violations of his civil rights under federal and New York state law, as well as related state law torts. *See* Doc. 1. Khatibi sought compensatory damages, punitive damages, and attorneys' fees and costs. *Id.* On July 7, 2010, Benno entered into an agreement with his colleagues, Richard Sullivan and Don Sullivan to continue working on Khatibi's case. Doc. 161, Ex. 1 ¶ 7. Khatibi represents that he ultimately discharged these attorneys for cause because "they attempted to improperly charge costs and disbursements in this action, against [his] recovery in a Court of Claims Action, which had settled, and they mislead [him] as to the terms of [his] agreement . . . to support their claim that they were entitled to do so." *Id.* ¶ 9. The question of whether Khatibi discharged his attorneys for cause was litigated in the Court of Claims. At an April 24, 2013 hearing before this Court, Khatibi agreed that "[i]f we had a full and fair opportunity to litigate [the claims related to discharge for cause] in [the Court of Claims], it would be binding on both

[the Court of Claims and the federal action]." Doc. 164, Ex. 3 at 15.  On April 30, 2013, Judge Terry Jane Ruderman of the Court of Claims issued a decision rejecting Khatibi's allegations of attorney misconduct.  *See* Doc. 164, Ex. 2.

After discharging Benno, Sullivan, and Sullivan, Khatibi retained the Law Office of Michael H. Joseph, PLLC.  Doc. 161, Ex. 1 ¶ 10.  Khatibi represents that he "agreed to retain the Law Office of Michael H. Joseph, PLLC, on a blended fee rate, in which [he] paid a large up front flat fee, and a reduced contingency and agreed to fund all of the litigation costs."  *Id.*  He "also agreed that [he] alone would be responsible for any attorney's fees to [his] prior attorneys."  *Id.*

On May 1, 2014, the firm Shandell, Blitz, Blitz & Ashley filed notice of a charging lien in this action.  Doc. 106.

In April 2018, Khatibi and Defendants in this case reached a settlement for $5,000,000.  Doc. 164, Ex. 1 ¶ 1.  At a June 22, 2018 conference, the Court recommended that a sum of $1,645,000 be held as security in order to pay Benno, Sullivan, and Sullivan.  Doc. 161, Ex. 1 ¶ 11.  The settlement agreement, which was executed on July 6, 2018, provides that:

> Whereas there is a dispute as to the amount of legal fees and disbursements that [Khatibi's] prior attorneys are entitled to, if any, and it is the intention of the parties not to delay the settlement because of the aforesaid fee dispute, it is agreed that, as recommended by the Court, the Law Office of Michael H. Joseph, PLLC, . . . will hold in its IOLA account, the sum of [$1,645,000], to satisfy the claimed lien until a settlement is reached or final judgment is entered determining said dispute, and upon said settlement or judgment, shall disburse said funds in the manner dictated by the settlement agreement or judgment.

Doc. 164, Ex. 1 ¶ 17.  According to Khatibi, the entire $1,645,000 was funded from Khatibi's portion of the settlement.  Doc. 161, Ex. 1 ¶ 11.  According to Benno and Richard Sullivan, Don Sullivan was to represent all three of them in negotiations with Khatibi over their attorney's fee.

3

However, Khatibi later entered into an agreement with Donald Sullivan only to resolve his claim for attorney's fees for $450,000. *Id.* ¶ 12. This money was withdrawn from the special account, reducing its sum to $1,195,000. The Court subsequently ordered Benno and Richard Sullivan to provide their time sheets for review. *Id.* ¶ 13. The parties disagree over the appropriateness of some of the hours billed to this matter.[1] According to Benno and Richard Sullivan, they worked 794 and 372.6 hours, respectively, on the matter, at an hourly rate of between $500 and $550. Khatibi maintains however, that these hours inappropriately include hours billed to the Court of Claims case, and that Benno and Richard Sullivan only worked 273.7 and 224.4 hours respectively on this matter. At their stated billing rate, Khatibi argues, the most that Benno and Sullivan could arguably recover, then, is $272,855. Doc. 162 at 4.

## II.     LEGAL STANDARD

"New York Judiciary Law § 475 . . . governs attorneys' charging liens in federal courts sitting in New York." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998). Section 475 provides:

> From the commencement of an action . . . the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Jud. Law § 475. "Under New York law, an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in proceedings in

---

[1] Benno recently notified the Court that the parties have reached a tentative agreement regarding the fees dispute. Doc. 172. As noted below, the parties are directed to update the Court regarding the proposed fee settlement.

4

which the attorney had rendered legal services." *Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. June 1, 2010) (citing N.Y. Jud. Law § 475). Specifically, "attorneys who terminate their representation are still entitled to enforce their charging liens, as long as the attorney does not withdraw without 'good cause' and is not discharged for 'good cause.'" *Id.* (collecting cases). As the Second Circuit has found, the charging lien "is a device to protect counsel against 'the knavery of his client,' whereby through his effort, the attorney acquires an interest in the client's cause of action." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 177 (2d Cir. 2001) (quoting *In re City of New York*, 157 N.E.2d 587, 590 (N.Y. 1959)). "A charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be 'fair.'" *Sutton v. N.Y.C. Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) (internal citations omitted).

### III. DISCUSSION

#### A. The Shandell, Blitz, Blitz & Ashley LLP Lien

While it is true that the firm of Shandell, Blitz, Blitz & Ashley LLP represented Khatibi in connection with his motion to vacate his conviction in state court, at no point did it represent him in the instant matter—and at no point did it appear on his behalf. The firm's sole action in this litigation has been to file a notice of lien. The firm registered no objection to Khatibi's instant motion to vacate its lien. "New York cases make clear that the charging lien provided for by Section 475 is for the benefit of an 'attorney of record' only." *Itar-Tass Russian News Agency*, 140 F.3d at 450 (collecting cases). Because the firm has, to the Court's knowledge, not had any involvement with this action, Khatibi's motion is granted, and the Notice of Charging Lien filed by Shandell, Blitz, Blitz & Ashley LLP is hereby vacated. Doc. 106.

### B. Motion to Release Funds from the Lien Amount

Khatibi seeks the release of $950,000 and maintains that "it is inequitable to hold $1,195,000 of the client's recovery in the special account, when the maximum amount of attorney's fees that [Benno and Richard Sullivan] can even arguably recover is $272,855." Doc. 162 at 6. Khatibi arrives at this sum by calculating Benno and Richard Sullivan's lodestar—that is, the number of hours reasonably worked on the matter multiplied by a reasonable rate.[2] *See, e.g.*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Benno and Richard Sullivan, in turn, argue that they are entitled to recover a percentage of Khatibi's ultimate recovery for three reasons: (1) Section 475 does not control in federal question cases in federal court; (2) even if Section 475 does apply, a percentage-based recovery is appropriate because the dispute is between attorneys; and (3) Khatibi, through counsel, agreed to a percentage-based recovery. Finally, they argue that even if a *quantum meruit* analysis does apply, such an approach is not synonymous with the "lodestar" approach and still warrants leaving the amount in the special account untouched. Though the Court does not agree with many of Benno and Richard Sullivan's arguments, it ultimately finds that they are entitled to a percentage-based fee. As such, the Court will not reduce the amount held in the special account.

*1. Application of Section 475*

As an initial matter, Benno and Richard Sullivan incorrectly assert that Section 475 does not control in federal question cases, such as this one. In support of this argument, they cite to *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442 (2d Cir. 1998); *Vitalone v.*

---

[2] Khatibi also appears to suggest that Benno and Richard Sullivan were dismissed for cause, which would change the entire fee analysis in this case. However, as Benno and Richard Sullivan correctly note, this issue was fully and fairly litigated in the Court of Claims, which found that Benno and Richard Sullivan had not been dismissed for cause. *See* Doc. 164, Ex. 2. As such, this issue is *res judicata*.

*City of New York*, 395 F. Supp. 3d 316 (S.D.N.Y. 2019), and *Agence France Presse v. Morel*, 10 Civ. 2730 (AJN), 2015 WL 13021413 (S.D.N.Y. Mar. 23, 2015).  However, *Itar-Tass Russian News Agency* is widely cited for the opposite proposition—namely that "New York Judiciary Law § 475 . . . governs attorneys' charging liens in federal courts sitting in New York."  140 F.3d at 448.  As for *Vitalone* and *Agence France Presse*, both of these cases simply note the uncontroversial proposition that "the determination of an appropriate sum for an attorney's charging lien is committed to the sound discretion of the trial court" and that the court need not "precisely spell out how it weighed the various factors making up the fee allowed."  *Agence France Presse*, 2015 WL 13021413, at *8 (internal quotation marks and citations omitted).  Indeed, both of these cases applied New York Judiciary Law.  *Id.* at *7–8; *Vitalone*, 395 F. Supp. 3d at 322–24.  This Court will do the same.

    2.  *The Nature of the Dispute*

The parties disagree over whether the instant dispute is one between a client and his former attorneys or exclusively between attorneys.  Indeed, whether Benno and Richard Sullivan are entitled to a *quantum meruit* or percentage-based fee may well turn on this distinction.  In a dispute between a discharged attorney and his client, "If the lawyer is discharged without cause and prior to the conclusion of the case . . . he or she may recover either (1) in *quantum meruit,* the fair and reasonable value of the services rendered, or (2) a contingent portion of the former client's ultimate recovery, but only if both of the parties have so agreed."  *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004).  "Where the dispute is only between attorneys, however," New York case law provides for slightly different rules:  "[t]he outgoing attorney may elect to take compensation on the basis of a presently fixed dollar amount based upon quantum meruit for the reasonable value of services

7

or, in lieu thereof, the outgoing attorney has the right to elect a contingent percentage fee based on the proportionate share of the work performed on the whole case." *Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 458 (1989).

Benno and Richard Sullivan argue that the instant dispute is one between attorneys because "Mr. Joseph was apparently retained, in part, on a contingent fee basis." Doc. 163 at 5. However, they point to no agreement between themselves and Mr. Joseph indicating any such agreement. *See, e.g.*, *Budin, Reisman, Kupferberg & Bernstein, LLP. V. Law Offices of Rosemarie Arnold*, 79 F. App'x 460, 460–61 (2d Cir. 2003) ("[B]oth firms signed a statement indicating that 'the attorneys' fees in this matter will be agreed upon between [the attorneys] at the time of the conclusion of [the] case . . . If we cannot resolve this matter at that time, we will jointly seek the [c]ourt's intervention.'"); *Lai Ling Cheng*, 73 N.Y.2d at 456–57 ("At the time of the substitution, the attorneys were unable to agree on the fee to be paid Murtaugh and, accordingly, the Lipsig firm sent a letter to him requesting that he turn over his file and acknowledging that he had a 'lien for prior legal services rendered . . . the amount of which shall be subsequently determined at the conclusion of the litigation.'"). Nor, to the Court's knowledge, has Mr. Joseph asserted any interest in the sum currently held in the special account. As such, this appears to be a dispute between Khatibi and his former attorneys, Benno and Richard Sullivan.

  *3.  Assent to a Percentage-Based Fee*

Finally, Benno and Richard Sullivan maintain that, even if this is not a dispute between attorneys, they are still entitled to a percentage-based fee because "both of the parties have so agreed." *Universal Acupuncture Pain Servs., P.C.*, 370 F.3d at 263. In particular, they point to a stipulation with Khatibi and his then counsel, Ron Mikoff, Esq., "not to litigate the issue of the

8

attorney's fees, disbursements or liens in the Federal case until the earlier of (i) the trial court's decision on any motion for summary judgment, and (ii) the settlement or other conclusion of the Federal case." Doc. 164, Ex. 4 ¶ 4. "When a client discharges an attorney without cause . . . either can require that the compensation be a fixed dollar amount determined at the time of discharge on the basis of quantum meruit or, in the alternative, they may agree that the attorney, in lieu of a presently fixed dollar amount, will receive a contingent percentage fee determined either at the time of substitution or at the conclusion of the case." *Lai Ling Cheng*, 73 N.Y.2d at 457–58 (internal citation omitted). "[W]hen attorneys agree to put off getting a *quantum meruit* recovery up front, a contingent fee basis should be presumed, with the discharged attorney receiving a 'prorated share.'" *Budin*, 79 F. App'x at 461 (citing *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658–59 (1993)). This is because, "[a]s a practical matter, quantum meruit valuation of services rendered by a discharged attorney can best be determined at the time of discharge, rather than some months or years later when the case finally ends." *Cohen*, 81 N.Y.2d at 659. Khatibi argues that this presumption should not apply because "if the defendants won summary judgment, then there would be no percentage based fee, but the prior attorneys would still claim a quantum meruit fee, which means that it was not the intention to have the prior attorney's work based upon a contingent fee." Doc. 170 at 2. However, the Court sees no reason why summary judgment would have necessarily precluded a percentage-based fee. Therefore, it presumes that in agreeing to defer the issue of their fees, Khatibi, Benno, and Richard Sullivan agreed to a percentage-based calculation of attorney's fees. As such, it will not reduce the sum held in the special account for purposes of paying Benno and Richard Sullivan's fees.[3]

---

[3] The Court notes that even if it had found that a *quantum meruit*-based calculation of fees was appropriate, it would still have denied Khatibi's request to reduce the sum in the special account. A *quantum meruit* calculation is not

## IV.  CONCLUSION

For the foregoing reasons, Khatibi's motion is GRANTED in part and DENIED in party. Shandell, Blitz, Blitz & Ashley LLP's lien is hereby vacated.  Doc. 106.  However, the amount currently held in the special account for attorney's fees will not be reduced.  The parties are hereby directed to appear for a telephonic conference on the issue of attorney's fees on **October 7, 2020** at **10:30am,** at which time they will update the Court regarding the tentative fee settlement recently reached between the parties.  *See* Doc. 172.  At that time, the parties are directed to call (877) 411-9748; access code 3029857#.

SO ORDERED.

Dated:  September 16, 2020
        New York, New York

                                                    Edgardo Ramos, U.S.D.J.

---

synonymous with a lodestar calculation.  Rather, it involves a multi-factor test that takes into account "the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known)."  *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998) (collecting cases).  Although the Court may resort to a "lodestar" calculation in considering these factors, *see id.* at 148–49, it is not obligated to do so.  As such, it would still be premature to reduce the funds in the special account.